UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER SADOWSKI,

                Plaintiff

        -v-                                        6:19-CV-592

ROSER COMMUNICATIONS NETWORK,
INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

LIEBOWITZ LAW FIRM, PLLC             RICHARD P. LIEBOWITZ, ESQ.
Attorneys for Plaintiff
11 Sunrise Plaza, Suite 301
Valley Stream, New York 11580

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I.    INTRODUCTION AND BACKGROUND

Plaintiff Christopher Sadowski ("Sadowski" or "plaintiff") is a professional photographer working out of Hawthorne, New Jersey. On May 17, 2018, the New York Post ran an article featuring one of his photographs. The picture captured a neon New York lottery sign, taken at night, which possessed certain distinctive features including the reflections of various lights off the window in which the sign hung. The New York Post's article provides a credit for plaintiff directly below the photograph, which the photography industry terms a "gutter credit." On July 2, 2018, plaintiff registered the photograph with the United States Copyright Office.

Defendant Roser Communications Network, Inc. ("Roser" or "defendant") is a New York-based Corporation that operates the website www.WUTQFM.com ("the website"). On

April 10, 2019, the website posted an article featuring that same photograph. Defendant did not license the photograph from Sadowski. Moreover, the gutter credit was conspicuously absent from the website's article.

On May 5, 2019, Sadowski filed the present complaint in this Court alleging: (1) copyright infringement under 17 U.S.C. §§ 106, 501 ("§ 501"); and (2) a violation of the integrity of copyright management information under 17 U.S.C. § 1202(b) ("§ 1202(b)"). On May 21, 2019, plaintiff submitted an affidavit of service, affirming that he had served a clerk in the office of the Secretary of State.[1]

Roser never responded to the complaint. On October 22, 2019, Sadowski attained an entry of default against defendant. On November 20, 2019, plaintiff moved for default judgment under Federal Rule of Civil Procedure ("Rule") 55. On December 11, 2019, the motion was denied because plaintiff failed to follow an express order to file a certificate of service. On December 24, 2019, plaintiff again moved for default judgment. The defendant has still failed to respond. The motion will be considered on the plaintiff's submissions without oral argument.

## II. **LEGAL STANDARD**

Under Rule 55, a district court may grant default judgment against a party for the failure to plead or otherwise defend an action. FED. R. CIV. P. 55; *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). A party moving for default judgment must first attain an Entry of Default from the Clerk of the Court. FED. R. CIV. P. 55(a). Once default has been established as proper, the party moving for default is "entitled to all reasonable

---

[1] Under Federal Rule of Civil Procedure 4, service on a corporation can be effected by following the rules of service for the state's courts of general jurisdiction. FED. R. CIV. P. 4(e)(1), (h)(1)(A). Under New York's rules for serving process on a corporation, a corporation may be served by personally delivering service on the secretary of state, a deputy, or any person authorized by the secretary of state to receive corporate service. N.Y. BUS. CORP. LAW § 306(b)(1).

2

inferences from the evidence offered." However, a district court still must determine whether the allegations establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

## III. DISCUSSION

Sadowski has alleged two counts against Roser: (1) § 501 copyright infringement; and (2) § 1202(b) removal of a copyright credit. He has also asked for attorney's fees and costs.

### A. INFRINGEMENT.

The elements of a copyright infringement claim are: "(1) ownership of a valid copyright[;] and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011). For a copyright to be valid, it must have been: (1) registered within three months of its first publication; or (2) prior to the allegedly infringing use. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 158 (2d Cir. 2001). Courts may take judicial notice of copyright registrations published in the Copyright Office's registry. *See Island Software and Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (citing FED. R. EVID. 201(b)).

Sadowski has adequately alleged every element of § 501 copyright infringement. His copyright registration dated July 2, 2018, bearing number VA 2-108-670, satisfies the first element of ownership of a valid copyright. *Kwan*, 634 F.3d at 229. Moreover, review of the two photographs demonstrates that Roser copied the entirety of the work, and thus certainly copied its constituent elements. *Id.*

Sadowski has requested statutory damages in the amount of $30,000. Section 504 of the copyright law allows a copyright holder to pursue statutory damages in an amount between $750 and $30,000 for each copyrighted work. 17 U.S.C. § 504(c)(1). However, if

an infringement is willful, a court may impose damages of up to $150,000. 17 U.S.C. § 504(c)(2).

The factors relevant to the amount of statutory damages that courts consider include: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). "[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid" to use the copyrighted material. *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016).

As is his right, Sadowski has declined to disclose the licensing fee that he commanded for the photograph from the New York Post. Thus, this Court is left to speculate as to the approximate value of the photograph that Roser infringed. Plaintiff cites several cases for the proposition that courts in this Circuit have frequently awarded $30,000 for defaulting copyright infringement defendants. However, those cases all involve complex and substantial copyrighted works such as: architectural designs for an expensive home, *Tokar v. 8 Whispering Fields Assocs., Ltd.*, 2011 WL 7445062, at *1, 2 (E.D.N.Y. Dec. 13, 2011); a suite of software, *Microsoft Corp. v. Comput. Care Ctr., Inc.*, 2008 WL 4179653, at *11 (E.D.N.Y. Sept. 10, 2008); and thirty musical compositions, *Peer Int'l Corp. v. Max Music & Entm't, Inc.*, 2004 WL 1542253, at *4 (S.D.N.Y. July 9, 2004).

Each of those cases thus involves a more substantial infringement than only a single photograph. As such, this case is far closer to *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 375 (S.D.N.Y. 2019). In that case, as in this one, the defendant infringed a single

4

photograph that the plaintiff had originally licensed to the New York Post. *Id.* The plaintiff in *Mango* had typically received between $250 to $750 per photograph, subject to a number of factors. *Id.* The court ultimately found that, given the willful infringement at issue in that case, five times the high end of his agreed licensing fee was appropriate. *Id.*

Roser's default established willfulness in infringing Sadowski's work, which, coupled with defendant's failure to cooperate in providing evidence of the value of the infringing picture, both merit considerable statutory damages. *Bryant*, 603 F.3d at 144. Similarly, a professional photographer has a right to earn his living without going to court to redress other parties' casual abuse of the fruits of his labor, and thus deterrence is a substantial concern. *Id.* However, there is limited evidence of any substantial profits or lost revenue from the infringement on defendant's part, and no reason to suspect a particularly large blow to plaintiff's revenue, which counsels against awarding him the full $30,000 that he requests. *Id.*

All told, given the lack of evidence and information in this case to provide a guideline for the value of the infringed copyright, and weighing the six factors relevant to statutory damages, the Southern District in *Mango* assigned an appropriate award of $3,750. 356 F. Supp. 3d 375-76. That sum was fairly and appropriately calculated, and it is likely—considering that both Sadowski and the *Mango* plaintiff negotiated the licensure of a single photograph to the same media entity—that plaintiff's licensing fee was similar. *Id.* Thus, defendant is liable to plaintiff for $3,750 for plaintiff's Count 1 copyright infringement claim.

### B. **REMOVAL OF COPYRIGHT INFORMATION.**

Although the Second Circuit has not itself announced the elements of a § 1202(b) violation for removal or alteration of a copyright credit, most courts in this district have found three: (1) the existence of copyright management information on the infringed work; (2) defendant's removal and/or alteration of that information; and (3) the removal and/or

5

alteration was done intentionally. *Mango*, 356 F. Supp. 3d at 376. Courts in this Circuit have also held that a gutter credit constitutes copyright management information, even if it is not physically imposed on a photograph or embedded in the photograph's data. *Id.* at 377.

Sadowski has adequately alleged every element of removal of copyright information to satisfy § 1202(b). He has plausibly alleged that: (1) he had a gutter credit in the original photograph, which constitutes copyright management information; (2) Roser removed the gutter credit when it republished his photograph; and (3) defendant's removal of the credit was intentional. *Mango*, 356 F. Supp. 3d at 376.

More specifically, Sadowski has plausibly alleged intentionality because the photograph's only widely available form was in the New York Post's article. That article unequivocally featured the gutter credit, which Roser had to have seen in copying the photograph. The gutter credit's absence from the website thus adequately allows for a plausible inference that defendant made the conscious decision to remove the credit before publishing the photograph. The defendant's default has thus rendered it liable for plaintiff's Count 2 violation of the integrity of copyright management information claim.

Courts in this Circuit have often held that an award of $5,000 in statutory damages is appropriate where, as here, there is evidence of willfulness but also a lack of evidence of direct injury. *See, e.g.*, *Mantel v. Smash.com Inc.*, 2019 WL 5257571, at *4 (W.D.N.Y. Oct. 17, 2019) (collecting cases). That allocation of damages is reasonable, and defendant is liable to plaintiff for $5,000 on Count 2 of the complaint.

### C. **ATTORNEY'S FEES AND COSTS.**

Both §§ 501 and 1202(b) allow a plaintiff to recover attorney's fees and costs. 17 U.S.C. §§ 505, 1203(b)(4), (5). "When determining whether to award attorney[']s fees [and costs], district courts may consider such factors as (1) the frivolousness of the non-prevailing

6

party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant*, 603 F.3d at 144. As an initial matter, because Roser defaulted and willfully removed the gutter credit on Sadowski's work, attorney's fees and costs are warranted. *Reilley v. Commerce*, 2016 WL 6837895, at *12 (S.D.N.Y. Oct. 31, 2016).

Regarding costs, a plaintiff may only recover identifiable, out-of-pocket disbursements relating to filing fees, process servers, postage, and photocopying. *See Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, 2019 WL 312149, at *12 (E.D.N.Y. Jan. 3, 2019). For costs, Sadowski's attorney has requested the $400.00 court filing fee and the $40.00 personal service fee. Those costs are appropriate, and Sadowski is entitled to recover $440.00.

In determining whether an assessment of attorney's fees is reasonable, "[b]oth [the Second Circuit] and the Supreme Court have held that . . . the product of a reasonable hourly rate and the reasonable number of hours required by the case . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The resulting product "should be in line with the rates prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation." *Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 412 (S.D.N.Y. 2003) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997)).

Naturally, this calculation depends on the hourly rates employed in the district in which the reviewing court sits. *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Courts in this district have recently determined hourly rates between $250 and $350 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals

to be reasonable. *Deferio v. City of Syracuse*, 2018 WL 3069200, at *3 (N.D.N.Y. June 21, 2018).

Once the typical hourly rate is established, the court should "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. Some few of the relevant factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill level required by the case; (4) the preclusion of employment with other clients due to acceptance of the case; (5) the attorney's customary hourly rate; (6) any time limitations imposed by the client or the circumstances; (7) the extent of involvement in the case and the results obtained; (8) the experience, reputation, and ability of the attorneys; and (9) awards in similar cases. *Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989)).

Ultimately, a fee is presumptively reasonable if it is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons*, 575 F.3d at 174 (internal citations and quotation marks omitted).

Plaintiff's attorney has requested attorney's fees in the amount of $2,975.00. That $2,975.00 amount reflects seven hours of work at $425 per hour. Plaintiff's attorney has affirmed that as the founding member and managing partner of his own law firm, this fee scale is appropriate. Although his formulation is technically correct, there are three reasons why his reasoning is misleading, and his fee scale inappropriate. First, he only graduated from law school in 2015. Second, his law firm has operated for only four years, beginning in

January of 2016. Both of these facts put his status as the founding member of his firm in a less flattering—but more accurate—perspective.

Third, and most importantly, is plaintiff's attorney's preceding reputation during his short legal tenure. In June of 2019, United States District Court Judge Mae D'Agostino considered a similar motion for default judgment in another claim brought by the same attorney. *Stridiron v. Cmty. Broads., LLC*, 2019 WL 2569863, at \*4 (N.D.N.Y. June 21, 2019) (collecting cases). That case, among several others, explored his *modus operandi* in exquisite—and excruciating—detail. *Id.* He brings complaint after complaint in court after court alleging minute copyright infringement claims to which, given the rather muted stakes involved, defendants often fail to respond. *See id.* (collecting cases); *see also Mantel*, 2019 WL 5257571, at \*4. In the colorful parlance of our time, plaintiff's attorney and those who follow a similar legal strategy are described as "copyright trolls." *Stridiron*, 2019 WL 2569863, at \*4.

When confronted with plaintiff's attorney's serial and nearly identical complaints, several other courts have reacted with scrutiny to his requested fee rate. In October of 2019, United States Chief District Court Judge Frank P. Geraci, Jr. of the Western District of New York found in *Mantel v. Smash.com Inc.*, that given his history and lack of experience, a fee rate of $180 per hour was appropriate, rather than his claimed $425 fee, and that his claim that he had worked for seven hours was excessive. *Mantel*, 2019 WL 5257571, at \*4-5.

Plaintiff's attorney's submissions in this case are curiously similar to those that he has submitted in several other copyright infringement cases. Indeed, even his calculation of attorney's fees is identical to two of the proposed default judgments that he supplied with his motion, as well as to his request in *Mantel*. *See generally* Dkt. 18-2, pp. 3, 5; *Mantel*, 2019

9

WL 5257571, at *4. All of this points strongly to minimal time and effort on his part. *Arbor Hill*, 522 F.3d at 186 n.3.

Moreover, it can hardly be said at this point that plaintiff's attorney's reputation is much of an asset to his clients. *Arbor Hill*, 522 F.3d at 186 n.3; *see Stridiron*, 2019 WL 2569863, at *4 (reciting his failures to comply with court orders, recent sanctions, and policies among the Southern and Eastern Districts of New York to require plaintiffs represented by him to file bonds before proceeding with suits). Accordingly, given his only four years of experience as an attorney, but in acknowledgement of the economic reality of inflation and the simple fact that he has accumulated more experience in the three months following *Mantel*, $190 per hour is appropriate. *Mantel*, 2019 WL 5257571, at *4-5.

Similarly, there are doubts as to the amount of hours that plaintiff's attorney actually spent on this case. Once again, he has recycled much of his filings—even his fee requests—from earlier cases. This evident redundancy casts significant doubt as to how much time he actually spent preparing his motions. Dkt. 18-2, pp. 3, 5; *Mantel*, 2019 WL 5257571, at *4.

Moreover, his billing an entire hour to request an entry of default and to process service of the summons and complaint both have an air of excess that cannot be accepted. Thus, because so much of plaintiff's attorney's work in this case has been imported from *Mantel*, it is only proper that the same number of hours apply. *Mantel*, 2019 WL 5257571, at *4-5. Thus, Sadowski is entitled to recover for three hours' worth of work at the aforementioned rate of $190 per hour, totaling $570.00. This amount combines with the $440.00 in costs for a total of $1,010.00.

## IV. **CONCLUSION**

Sadowski is in a difficult and competitive profession. Attempting to make ends meet as a freelancer of any description is often a challenge, and it is only made all the harder by

defendants such as Roser who take freelancers' work product without payment or even credit. For inflicting this harm on plaintiff, and for failing to muster any defense or explanation for its actions, defendant must stand liable.

However, this Court must also add itself to the long list of courts to hear a claim brought by plaintiff's attorney and come away frustrated. Several courts have limited the recoverable attorney's fees in nearly identical cases, yet he has not changed any aspect of his fee request. Should he wish to recover the fees that he requests in the future, he would be well-served to remember his responsibility of candor, and to request fees in what he should well know by now to be a reasonable amount. Nevertheless, Sadowski has met his burden for default judgment, and is entitled to attorney's fees, costs, and damages.

Therefore, it is

ORDERED that

1. Plaintiff's Rule 55 motion for default judgment is GRANTED;

2. Plaintiff is entitled to damages in the amount of $8,750;

3. Plaintiff is entitled to attorney's fees and costs in the amount of $1,010.00; and

4. Plaintiff may recover a total of $9,760.00 from defendant Roser.

The Clerk of Court is directed to enter judgment accordingly and close the case.

IT IS SO ORDERED.

_____
David N. Hurd
U.S. District Judge

Dated: January 22, 2020
       Utica, New York.